## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DARRELL SATTERFIELD,** | ) | |
| **PLAINTIFF,** | ) | |
| **VS.** | ) | **2:11-cv-3057-JHH** |
| **THE BOARD OF TRUSTEES** **UNIVERSITY OF ALABAMA,** | ) | |
| | ) | |
| **DEFENDANT.** | | |

### MEMORANDUM OPINION

The court has before it the May 30, 2012 Motion (Doc. #11) for Summary Judgment filed by The Board of Trustees of the University of Alabama ("UAB"). The Motion (Doc. #11) has been fully briefed (*see* Docs. #12, 14, 15) and was deemed submitted, without oral argument, to the court for review on June 27, 2012. (*See* Doc. #13). For the reasons outlined below, the court finds that the Motion (Doc. #11) for Summary Judgment is due to be granted in its entirety.

## I.   Procedural History

Plaintiff Darrell Satterfield commenced this action by filing a complaint in this court on August 19, 2011, alleging that his employer, the Board of Trustees of the University of Alabama, violated Title VII of the Civil Rights Act of 1964, as

1

amended, 42 U.S.C. § 2000e *et seq.*, by retaliating against him for reporting the utterance of discriminatory, offensive, and racial slurs by a co-worker.  (*See* Compl., ¶¶ 5, 8).  Defendant's May 30, 2012 Motion (Doc. #11) for Summary Judgment and brief (Doc. #12) in support thereof asserts that there is no dispute of material fact and that UAB is entitled to judgment as a matter of law.

On May 30, 2012, Defendant filed a brief (Doc. #12) and evidence[1] (Doc. #12, Exhs. A, B, and C) in support of its motion.  Plaintiff filed a response (Doc. #14) in opposition to the motion on June 20, 2012 and on the same date submitted evidence[2] in support of the opposition.  Defendant filed a reply brief (Doc. #15) to Plaintiff's opposition on June 25, 2012.

## II.    Legal Standards for Evaluating a Summary Judgment Motion[3]

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

[1] Defendant UAB submitted: the deposition of Darrell Satterfield, with exhibits (Exhibit A); the affidavit of Al Moradi, with exhibits (Exhibit B); and the affidavit of Ronald E. Murphy (Exhibit C).

[2] Plaintiff submitted the affidavit of Darrell Satterfield.

[3] Federal Rule of Civil Procedure 56 was amended on December 1, 2010.  However, even with the 2010 amendments, "the standard for granting summary judgment remains unchanged."  FED. R. CIV. P. 56 Advisory Committee's Note (2010 Amendments).

and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023

(11th Cir. 2000).  The party asking for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion and identifying those

portions of the pleadings or filings that the moving party believes demonstrate the

absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Once the

moving party has met its burden, Rule 56(a) requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is

a genuine issue for trial.  *Id*. at 324.

The substantive law will identify which facts are material and which are

irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman*, 229

F.3d at 1023.  All reasonable doubts about the facts and all justifiable inferences are

resolved in favor of the nonmovant.  *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City

of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50.  The method used by the party moving for summary

judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial).  *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue

4

in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.   Relevant Undisputed Facts[4]

Plaintiff Darrell Satterfield was hired by UAB as a General Mechanic on May 11, 2009.  (Satterfield Dep. at 12).  In April 2010, Satterfield complained to Ron Murphy, his then-supervisor, that co-worker Michael Dillard had made racially offensive comments in Satterfield's presence.  (Satterfield Dep. at 25-26; *see also*

---

[4] If the facts are in dispute, they are stated in the manner most favorable to the nonmoving party. *See Fitzpatrick*, 2 F.3d at 1115.

Moradi Aff., ¶ 3).  The complaint was investigated, and on April 29, 2010 Dillard received a written warning for having made the comments.  (Moradi Aff., ¶ 4; *see also* Satterfield Dep. at 26-27).

Two days prior to the date of co-worker Dillard's written warning, April 27, 2010, Satterfield emailed Al Moradi, the Director of Hospital Maintenance, advising Moradi that Dillard had apologized to Satterfield and had stated that such comments would "never happen again."  (Moradi Aff., ¶ 5; Exh. 1 to Moradi Aff.).  Because the email also stated that Satterfield believed Dillard that no further comments would be made, Moradi understood that there was no longer any issue between Satterfield and Dillard.  (Moradi Aff., ¶5; Exh. 1 to Moradi Aff.).

On the same date as the email, supervisor Ron Murphy completed a performance appraisal form for Satterfield.  (Exh. 2 to Moradi Aff.).  Satterfield was rated below average based on his "limited General Mechanic type knowledge upon his arrival at UAB" and based on his "need to increase his overall knowledge of all hospital systems (required of GM)" and "need to become a better team member." (Exh. 2 to Moradi Aff.).  A management plan was included which provided for "training, resources, and verif[ication] he [Satterfield] meets and or exceeds those goals."  (Exh. 2 to Moradi Aff.).  In June 2010, the appraisal was presented to Satterfield.  (Exh. 2 to Moradi Aff.).  Satterfield countered in a written statement his

6

belief that his "knowledge of the job exceeded the requirements" and that "prior situations with UAB may have been the result of this evaluation." (Exh. 2 to Moradi Aff.).

On or about May 24, 2010, Satterfield was issued a verbal warning[5] for the misconduct of "harassing" staff in the Heart and Vascular area to check his blood pressure and blood sugar level "on a regular basis for many months." (Exh. 2 to Satterfield Dep.). "Making such requests of your customers is not proper conduct of a maintenance employee and shows very questionable decision making." (Exh. 2 to Satterfield Dep.). Satterfield believes this verbal warning was in retaliation for lodging the complaint against Dillard because John Halsey, one of the supervisors under Al Moradi, had already pulled Satterfield aside and told Satterfield to start getting his pressure checked at the employee health station. (Satterfield Aff. at 2) ("So the situation was already over and addressed two weeks before Al Moradi called me in the office for the counseling."). When Satterfield met with Moradi about the blood pressure issue on May 24, 2010, he reportedly told Moradi that he believed that the verbal warning had to do with the complaint lodged against Dillard. (Satterfield Aff. at 3). "At this point Al Moradi became furious and yelled at me, 'Don't you

---

[5] This is the only warning, verbal or otherwise, that Satterfield has received to date while working at UAB. (Satterfield Dep. at 17-18).

accuse us of harassing you!'  Then he stormed out of the room and returned to apologize about five minutes later."  (Satterfield Aff. at 3).

In June 2010, Satterfield met with Janet Cunningham, Human Resources officer for Facilities and expressed concern over work stress and feeling harassed. (Satterfield Dep. at 103; Exh. 7 to Satterfield Dep.).  Cunningham shared with Satterfield contact information for the Employee Assistance Program ("EAP") and recommended that he speak with Anita Bonasera in the employee relations department if he felt that he was being retaliated against by his supervisor.  (Exh. 7 to Satterfield Dep.).  Satterfield called Bonasera one time, and she allegedly did not return his call.  (Satterfield Dep. at 106).

Three or four months later, Satterfield was moved to the weekend shift of two twelve-hour shifts on Saturday and Sunday with the remaining sixteen hours coming on Monday and Tuesday.  (Satterfield Aff. at 3).  Satterfield says that shift was least desirable among the General Mechanics, however, he was willing to work it since he badly needed a job.  (Satterfield Aff. at 3).  Despite the fact that the shift was "usually" given to new hires or people with lesser amounts of seniority, Satterfield contends that there were several employees with lesser amounts of seniority whom Moradi could have chosen for the shift.  (Satterfield Aff. at 3; Satterfield Dep. at 40-41, 49-50, 53).  "But since I was on the outs with Al Moradi for complaining about

Michael Dillard and subsequently actions by UAB, he put me on the less desirable shift to my detriment."  (Satterfield Aff. at 3).

Although he does not provide a time frame, Satterfield also contends that he was passed over for several opportunities to work with Heating, Ventilation, and Air Conditioning ("HVAC") mechanics while he was a General Mechanic, though at the time he did not have the required number of years of experience with those types of systems.  (Satterfield Aff. at 3; Satterfield Dep. at 50).  Satterfield was, however, promoted to HVAC Preventive Maintenance in January 2011. (Satterfield Dep. at 40-41; Satterfield Aff. at 3).  The increase in pay for Preventive Maintenance Mechanic was "only" $1.00 per hour higher than the job rate increase Satterfield was slated to get in his prior position; however, the Maintenance Mechanic position did yield a 26% overall pay increase.[6]  (Satterfield Aff. at 3; Moradi Aff., ¶11).  Satterfield admits that he has never been demoted or terminated from his employment at UAB. (Satterfield Dep. at 17).

Satterfield contends that these occurrences made him fearful that he would be fired, making him a "nervous wreck."  (Satterfield Aff. at 4).  He saw a psychiatrist

---

[6] At some point prior to April 2010, UAB began paying for Satterfield to attend Lawson State at Bessemer for the study of HVAC.  (Satterfield Dep. at 47-48; Exh. 4 to Satterfield Dep.). As of February 24, 2012, the date Satterfield's deposition was taken, Satterfield remained in school at UAB's expense.  (Satterfield Dep. at 48).

and was prescribed an anti-depressant.  (Satterfield Dep. at 90-93).  Satterfield seeks

restitution "for the emotional distress that I've been through, my lawyer's fees, and

no more harassment from UAB, and an equal opportunity in obtaining any training

and development in my field."  (Satterfield Dep. at 96).[7]

## IV.   Applicable Substantive Law and Analysis

Plaintiff's complaint makes a single claim against UAB – that he was retaliated

against for reporting racially offensive comments to his supervisor.  (*See generally*

Compl.).  Specifically, he alleges:

> UAB retaliated against Satterfield for reporting said
> discriminatory conduct via unwarranted disciplinary actions, less
> desirable work schedules, unjustified low performance
> evaluations, and deprivation of other employment opportunities
> within UAB, among other things.  (Compl., ¶ 8).

In analyzing the merits of this claim, the court must apply the familiar

*McDonnell Douglas* burden shifting analysis.[8]  *See Baker v. Russell Corp.*, 372 Fed.

---

[7] In his deposition, Satterfield alleges additional circumstances as retaliatory for
complaining about Dillard's offensive comments.  These grounds are not mentioned in his
Memorandum Response (Doc. #14) in Opposition to Defendant's Motion for Summary
Judgment.  They are: (1) that he was not allowed to be off work two to three months for surgery,
despite the fact that he did not have enough accumulated sick time to be out for that length of
time (Satterfield Dep. at 73-74); (2) that he should have been allowed to transfer to lighter duty
in the fire alarm area, despite the fact that Facilities does not allow employees to work light duty
(Satterfield Dep. at 74-75; Moradi Aff., ¶23); and (3) that he was forced to work in dangerous
areas, although he did not specify what was dangerous about the work other than to say that he
had to access roof space (Satterfield Dep. at 86-87).

[8] Plaintiff concedes that this is a circumstantial evidence case.  (*See* Doc. #14 at 6-7)
(analyzing the claim under the framework for a circumstantial evidence case).

Appx. 917, 919 (11th Cir. April 12, 2010) (citing *Bryant v. Jones*, 575 F.3d 1281,

1307 (11th Cir. 2009), *cert. denied*, – S. Ct. – (U.S. Feb. 22, 2010) ("We apply the

*McDonnell Douglas* framework when analyzing claims of retaliation brought under

. . . Title VII . . .")). Anti-retaliation provisions prohibit an employer from retaliating

against an employee "because he has opposed any practice made an unlawful

employment practice," including discrimination on the basis of race.  42 U.S.C. §

2000e-3(a).  The goal of these provisions is to "prevent[ ] an employer from

interfering (through retaliation) with an employee's efforts to secure or advance

enforcement of the Act's basic guarantees," including freedom from race

discrimination.  *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53 (2006).

"An employee need not prove the underlying claim of discrimination for the

retaliation claim to succeed." *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056,

1059 (11th Cir.1999) (citations omitted).

To establish a *prima facie* case of retaliation, Plaintiff must show: (1) he

engaged in protected activity or expression; (2) he suffered an adverse employment

action; and (3) the adverse employment action was causally connected to the

protected conduct.  *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388

(11th Cir. 1998); *see also Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d

1491, 1494 (11th Cir. 1989).  If Satterfield is able to advance a *prima facie* case of

11

retaliation, the burden then shifts in accordance with *McDonnell Douglas* to UAB to articulate legitimate, non-discriminatory reasons for the alleged retaliatory acts. *See Holifield*, 115 F.3d at 1566.  Upon the employer's successful articulation, for a claim to survive summary judgment, Plaintiff must demonstrate that the employer's proffered explanation operates as a pretextual ruse for retaliation. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (citation and internal quotation omitted).

UAB contends that Satterfield cannot show that he suffered an adverse employment action as that term has been construed by the Supreme Court.  (*See* Doc. #12 at 4).  In *Burlington Northern & Santa Fe R.R. Co. v. White*, the Supreme Court concluded that "the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant.  In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  548 U.S. 53 (2006); *see also Bush v. Regis Corp.*, 257 Fed. Appx. 219, 222 (11th Cir. Dec. 3, 2007); *Taylor v. Roche*, 196 Fed. Appx. 799, 802 (11th Cir. Sept. 12, 2006).  That is, the anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces injury or harm. *See Rutledge v. Sun Trust Bank*, 262 Fed. Appx. 956, 958 (11th Cir. Jan. 18, 2008);

12

*see also Chapter 7 Trustee v. Gate Gourmet, Inc.*, – F.3d –, 2012 WL 2072671 at *9 (June 11, 2012) ("Withholding a position that an employee would otherwise receive under company policy, particularly when it results in her no longer having a job, might well dissuade a reasonable worker from making or supporting a charge of discrimination."); *Kurtts v. Chiropractic Strategies Group, Inc.*, Slip Copy, 2012 WL 1991929 at *4 (June 1, 2012) ("A jury crediting [Plaintiff's] account could find that [plaintiff] complained about the harassment, was immediately told that it was uncertain whether any action would be taken, and that she should instead consider taking her last paycheck."). The inquiry is individualized because the significance of any given act of retaliation will often depend on the particular circumstances. *See Taylor*, 196 Fed. Appx. at 802. But the acts must nevertheless be material and significant and not trivial. *See Rutledge*, 262 Fed. Appx. at 958; *see also Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). The retaliation clause does not immunize an employee from those petty slights or minor annoyances that often take place at work and that all employees experience. *See Burlington*, 548 U.S. at 68.

Satterfield has what amounts to a laundry list of actions which he claims meet the *Burlington* standard of adversity: (1) he received a below-average performance appraisal; (2) he was issued a verbal warning for asking nurses in his area to take his

13

blood pressure; (3) he was moved to an undesirable weekend shift; and (4) he was passed over for several opportunities to work in HVAC. (*See* Doc. #14 at 9-10). The problem for Satterfield, however, is that there is nothing in the record to support a finding that such actions might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington*, 548 U.S. at 68. Though Satterfield testifies that he *subjectively* felt nervous and depressed after these actions were taken "against" him, a reasonable person would not have felt so. *See Howell v. Compass Group*, 448 Fed. Appx. 30 (11th Cir. Nov. 22, 2011)("Whether a particular action is materially adverse is to be judged from the perspective of a reasonable employee in the plaintiff's position considering all of the circumstances."). Quite the contrary, *after* Satterfield complained about discriminatory comments made by a co-worker, and *despite* the below-average performance review, he was shortly thereafter promoted with a 26% pay increase; he was provided with schooling (and continues to attend technical school) on HVAC maintenance at the expense of UAB. (*See* Moradi Aff., ¶¶ 11, 12). *See Jarvis v. Siemens Medical Solutions USA, Inc.*, 460 Fed. Appx. 851, 858 (11th Cir. March 8, 2012) (finding that plaintiff's alleged adverse actions did not amount to being actionable for purposes of a claim for retaliation); *Morales v. Georgia Dep't of Human Resources*, 446 Fed. Appx. 179, 184 (11th Cir. Nov. 2, 2011) ("There is no evidence that the Documentation would have affected her

14

salary or job status.  Further, she failed to show that the Documentation would have affected any of her future pay raises.").  This context matters.  Although some actions taken by UAB may have been perceived by Satterfield as adverse, the totality of the picture of actions taken by UAB before, during, and after the complaint was made make clear that UAB did not subject Satterfield to retaliation.  *See Burlington*, 548 U.S. at 68 ("[T]he significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters."); *see also Tarmas v. Secretary of Navy*, 433 Fed. Appx. 754, 763 (11th Cir. July 6, 2011) ("In any event, after he received the letter, [plaintiff] also received an acceptable performance review, and he has since received several cash bonuses.").  For this reason alone, UAB's motion for summary judgment is due to be granted.

Even assuming, for the sake of argument, that Satterfield had established a *prima facie* case of retaliation, his claim would nevertheless fail.  In accordance with the *McDonnell Douglas* burden shifting analysis, UAB has articulated legitimate, non-discriminatory reasons for the challenged employment actions.  *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001); (*see also* Doc. #12 at 7-8).  This intermediate burden is "exceedingly light."  *See Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994).  UAB was under no obligation to treat Satterfield *more* favorably simply because he lodged a complaint of discrimination

against a co-worker. *See Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). Satterfield has completely failed to establish that UAB's articulated legitimate, non-discriminatory reasons for the challenged employment decisions were pretextual. To establish pretext, a plaintiff must "present concrete evidence in the form of specific facts" showing that the defendant's proffered reason was pretextual. *See Bryant v. Jones,* 575 F.3d 1281, 1308 (11th Cir. 2009); *see also  Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 771 (11th Cir.2005) (A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherences or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1088 (11th Cir.2004). Conclusory allegations and assertions are insufficient. *See Bryant,* 575 F.3d at 1308. Although there is some self-serving dispute in the record as to whether or not the below-average performance review and the verbal warning were "false," Satterfield presents absolutely *no* evidence that retaliation was the real reason for that and the other challenged actions, other than making a blanket assertion that the actions were done "as retaliation for his reporting of Michael Dillard." (*See* Doc. #14 at 9-10). This is clearly insufficient to establish

16

pretext.   For this separate and additional reason, UAB's motion for summary judgment is due to be granted.

**V.      Conclusion**

For the reasons asserted above, Defendant The Board of Trustees of the University of Alabama's Motion (Doc. #11) for Summary Judgment is due to be granted.  A separate final judgment will be entered in favor of the Board of Trustees of the University of Alabama as to all of Plaintiff's claims.

**DONE** this the ___31st___ day of July, 2012.

_____

SENIOR UNITED STATES DISTRICT JUDGE